**NEW ROCHELLE DODGE, INC., Plaintiff,**

v.

**CHRYSLER CREDIT CORPORATION, Defendant.**

**No. CV 94–1488.**

United States District Court, E.D. New York.

Sept. 6, 1996.

Jules H. Rosenberg, Hauppauge, NY, for plaintiff.

Olshan, Grundman, Frome & Rosenzweig by Aaron R. Cahn, New York City, for defendant.

*FINDINGS OF FACT AND CONCLUSIONS OF LAW*

WEXLER, District Judge.

*FINDINGS OF FACT*

1. Plaintiff New Rochelle Dodge, Inc. ("plaintiff"), a New York corporation with a principal place of business in New York, has for many years operated an automobile dealership authorized by the Chrysler Motors Corporation.

2. Defendant Chrysler Credit Corporation ("defendant"), a Delaware corporation

with a principal place of business in Michigan, is in the business of financing.

3. Plaintiff and defendant have for many years been engaged in a financing arrangement, whereby defendant advances funds to plaintiff in exchange for assignments to defendant of retail contracts for the sale of motor vehicles.

4. Prior to 1989, the parties' agreement called for a "repurchase" relationship. Under that agreement, in the event of a default by the customer, defendant had the right to demand that plaintiff repurchase the retail contract for the amount unpaid, and assume responsibility for disposing of the vehicle and pursuing the customer for the amount unpaid.

5. By agreement dated April 10, 1989 (the "1989 agreement"), the parties changed to a "non-recourse" relationship. *See* Pl. Exh. 1. Under the 1989 agreement, plaintiff was not required to repurchase a retail contract after a default. It was defendant, under the 1989 agreement, who assumed the responsibility for enforcing the contract against the customer.

6. However, paragraph 3.3 of the 1989 agreement provides, in pertinent part:

> If any part of the difference between the cash price and the total time sale price shall be refunded by you [defendant] to the obligor of a Contract for any reason, including prepayment, we [plaintiff] agree to pay you in cash an amount which will bear the same ratio to the Contract Reserve as the amount of the refund or rebate bears to the amount on which it is computed.

7. The terms "cash price" and "total time sale price" are not defined in the 1989 agreement, and their meanings are vague in the context of the 1989 agreement.

8. When read in conjunction with a retail instalment contract, *see* Pl.Exh. 2A, the term "cash price" means the cost of the vehicle itself. In a contract for sale of a vehicle on credit, the "cash price" does not include the charge to the customer for an extended warranty service contract.

9. When read in conjunction with a retail instalment contract, *see id.*, the term "total time sale price" means the total amount charged to a customer on a retail finance contract to be paid over time. The "total time sale price" includes the charge to the customer for an extended warranty service contract.

10. Between 1991 and 1993, defendant charged back, against plaintiff's reserve account, amounts representing the unexpired portions of extended warranty service contracts which had been terminated on account of default.

## CONCLUSIONS OF LAW

■ 1. The charge for an extended warranty service contract is "part of the difference between the cash price and the total time sale price."

■ 2. Where a customer has defaulted, but nonetheless is entitled to a refund for the unexpired portion of the extended warranty service contract, and the refund has been paid to the customer by defendant, under the 1989 agreement, plaintiff is obligated to pay to defendant an amount "which will bear the same ratio to the Contract Reserve as the amount of the refund or rebate bears to the amount on which it is computed."

3. The chargebacks from defendant to plaintiff, which are the subject of the Complaint in the instant case, are authorized by the 1989 agreement. Accordingly, the Complaint must be dismissed.

4. The Clerk of the Court is directed to enter judgment in favor of defendant.

SO ORDERED.